JOHN E. HALL COMMISSION COMPANY *v.* GEORGE M. FOOTE
ET AL.

[43 South., 676.]

1. ATTACHMENTS IN CHANCERY. *Code* 1906, § 536. *Proceedings. Jurisdiction. Personal decree.*

   Under Code 1906, § 536, providing for attachments in chancery against nonresident debtors, a court of equity may, where a nonresident defendant has appeared and answered in the suit, render a personal decree against him for the balance of complainant's debt not realized by sale of the attached property.

2. REMEDIAL STATUTES. *Vested right.*

   A litigant has no vested right in a rule of procedure or a remedial statute.

FROM the chancery court of Lauderdale county.

HON. JAMES L. McCASKILL, Chancellor.

Foote and another, appellees, were the complainants and the Commission Company, the appellant, defendant in the court below. From a decree in complainant's favor the defendant appealed to the supreme court.

The complainants sued the defendant, a nonresident corporation, in the chancery court and obtained an atttachment, under Code 1906, § 536, against it. The summons in the case was duly served by the sheriff on the secretary and treasurer of defendant, who was temporarily in the county, and the attachment writ was levied upon goods and chattels of defendant also found in the county.

The defendant appeared in the suit, answered the bill and made its defense, contending that it was not indebted to the complainants.

The chancery court decreed that it was indebted, adjudged the sum due from it to complainants, $1,615, and rendered a personal decree therefor and, as well, condemned the goods and chattels levied upon to be sold to satisfy the sum found to be due.

*Miller & Baskin*, and *Alexander & Alexander* and *George B. Power*, for appellant.

We respectfully contend that the decree rendered by the lower court in this case should be reversed on the following grounds:

First. There was no contract on the part of appellant, John E. Hall Commission Company, to deliver the grain in Mississippi; on the contrary, they fully performed their part of the contract when they delivered the grain in good condition to the carrier in St. Louis.

For the purpose of seeing what the contract was, its terms, etc., let us examine the record:—

Foote, one of the complainants testifying, says: "This corn was purchased by wire from John E. Hall Commission Company and confirmed by letter, but I cannot locate the originals; will try to find the duplicates and attach letter." These duplicates were not attached and do not appear in evidence and the only evidence we have from complainants is that the corn was purchased by wire.

Hall, in his deposition, states: "The corn in question was sold as No. 3 corn in St. Louis and no guarantee as to condition on arrival; nor was it sold to be shipped as sound and dry, as the rules for No. 3 corn do not so provide." "This corn was sold as No. 3 corn, was not guaranteed to keep and, in fact, no condition followed this transaction; in fact, a copy of confirmation attached shows corn was sold our terms and not terms

in Hatticsburg. Buyers in Mississippi during the germinating season would buy only the very driest of corn and, in fact, at no time, buy No. 3 corn."

The invoices for these cars are endorsed, "All sales made positively our terms."

It must be clear in the absence of any evidence to the contrary and in view of the positive evidence in the record that this corn was sold by the Commission Company on its terms in St. Louis, and while the record contains no evidence that the corn was in bad condition when it was inspected (not in every case when it arrived at destination) the record also contains positive and uncontradicted evidence that the corn was in good condition when it was loaded in the cars at St. Louis. This is conclusively shown by the inspection certificates and also by the depositions of witnesses who saw the corn when it was loaded.

The rules of the Board of Railroad & Warehouse Commissioners of St. Louis provide "No. 2 corn shall be mixed corn, dry and reasonably clean, but not sufficiently sound for No. 1." "No. 3 corn shall be mixed corn, reasonably dry and reasonably clean, but not sufficiently sound for No. 2." The court will observe that while No. 2 corn must be dry, No. 3 corn shall be only reasonably dry.

"Where the duty of the seller is to send the goods to the buyer the general rule is that delivery to a common carrier is equivalent to a delivery to the buyer himself." Am. & Eng. Ency. Law, p. 1071.

"It is sufficient that as between the seller and the vendee the goods ordered of the seller by the vendee are to be considered as delivered to the vendee when they are delivered to a common carrier for transportation to him (Story on Sales, sec. 306), and being so delivered to the vendee, he must look to the common carrier for their actual delivery, as the vendor is not further responsible therefor." *Planters Oil Mill* v. *Falls*, 29 So. Rep. (Miss.), 786.

The telegraphic order being for car-load lots contemplated shipment in car-load lots and the duty of the John E. Hall Commission Company was done when it delivered to the common carrier in St. Louis, for transportation to Foote & Gaston, the four car loads of No. 3 corn, "reasonably dry and reasonably clean." It was sold in St. Louis and it was delivered in St. Louis; if, as is claimed by complainants, it reached destination in bad condition and could not be used by Foote & Gaston, then, obviously, their recourse was on the carrier; recognizing this, the John E. Hall Commission Company, in their letter of May 4th, 1903, wrote, "We are certainly aware that you should have a claim against the railroads for the cars that are delayed and we are only too glad to take the claim up for you as soon as you send us exact memoranda of your losses accompanied by expense bills for same."

Second. The final decree is simply a personal decree against a nonresident for money. The proceeding is purely statutory and there is power only, under Code of 1892, §§ 486 and 487, to subject the indebtedness and there is no warrant for personal decree.

We adopt the above from the opinion of the court in the case of *Academy* v. *Port Gibson Co.,* 80 Miss., 517, s.c., 32 So. Rep., 116, and, in that opinion the court went on to say that "Even in proceedings to foreclose a mortgage there could be no personal decree for the balance unsatisfied from the proceeds of a sale of the mortgaged property, but for the statute authorizing it. There is no statue authorizing such decree in the cases of foreign attachments in chancery as this case is."

The legislature of 1906, following the Code Commissioners, sought to supply the omission from the statutory provisions on this subject as they had previously existed and in sec. 536 on attachment against nonresidents inserted in the provision that "The court shall give a decree *in personam* against such nonresident, absent or absconding debtor if summons had been personally served on him, or if he has entered an appearance."

This case, however, originated prior to this statute, and is not covered by this section nor by the statutes on sequestration.

The personal decree is for $1,615.25 and the value of the property condemned by the decree is only $1,400.

In the absence of statutory provisions, and even with such statutory provisions, does this court hold that a nonresident, whose property is wrongfully attached in this state and who comes into the court for the purpose of contesting such an attachment, subjects himself to the liability of a personal decree and a judgment over. We think not. Just because the John E. Hall Commission Company is alleged to have property in the state of Mississippi of the value of $1,400 and comes into the court for the purpose of defending an attachment against that property is it to be subjected to a personal decree for the amount claimed by complainants to be due them, or $1,615? We believe the court will not so hold.

*Bozeman & Fewell,* for appellees.

The defendant, John E. Hall Commission Company of St. Louis, sold and warranted to Foote & Gaston at Hattiesburg the corn in question as No. 3 corn.

It was sold "to be delivered by John E. Hall Commission Company to Foote & Gaston, one car load at Mount Olive, one car load at Collins, Miss., one car load at Hattiesburg, Miss., and one car load at Ellisville, Miss.

The corn was invoiced as No. 3 corn. The freight to destination was prepaid by John E. Hall Commission Company. The price charged was the price at destination and not at St. Louis. The corn was consigned to the order of John E. Hall Commission Company at Ellisville, Miss., and the other points of destination respectively (notify Foote & Gaston merely).

The rendition of a decree *in personam* against defendants below is assigned for error.

The defendant against whom the personal decree was rendered (John E. Hall Commission Company) voluntarily ap-

peared by counsel and answered the bill and defended the case on its merits to final decree.

This was sufficient under the general rule to give the court jurisdiction of the person.   17 Am. & Eng. Ency. L., 1063.

This court did hold in the case of *Academy* v. *Port Gibson Co.,* 80 Miss., 517, s.c. 32 South., 116, 448 (commonly called the *Rothrock case*), that there was no warrant under §§ 486, 487, Code 1892, for the rendition of a personal decree.

We never fully appreciated the reason for that decision in cases where the defendant appeared and defended on the merits, and we hoped to see it modified or overruled on second consideration by this court.

But in the meantime and while the action at bar was pending and undetermined, the legislature cured the weakness in secs. 486 and 487 by enacting § 536 of the Code of 1906, which expressly authorizes the rendition of a decree *in personam* if the nonresident defendant has entered an appearance.

This statute went into effect on October 1, 1906, and this case was heard and final decree rendered on December 1, 1906.

We submit that § 536, Code 1906, has to do with the remedy only, and applies therefore to actions pending at the date of its enactment (*i. e.,* on the date that it became operative) as well as to actions thereafter brought.

The defendant below had no vested right in the failure of the legislature to confer by §§ 486 and 487 of the Code of 1892 jurisdiction upon the court to render against it a personal decree.

The enactment of § 536, Code 1906, deprived the defendant of no contract right or other right, and of no defense to the action on its merits.

Its effect was merely to confer upon the chancery court jurisdiction (which it did not before have) to render decrees. *in personam* against defendants who had been personally summoned in this state, or who had entered an appearance in cases like the case at bar.

That such statutes apply to pending actions is well established, both by reason and by authority.

Mr. Cooley in his Constituional Limitations (7th ed.), 515, states the rules as follows:

Change of Remedies.    Again, the right to a particular remedy is not a vested right.    This is the general rule; and the exceptions are of those peculiar cases, in which the remedy is part of the right itself.    As a general rule every state has complete control over the remedies which it offers to suitors in its courts. It may abolish one class of courts and create another.    It may give a new and additional remedy for a right or equity already in existence.    And it may abolish old remedies and substitute new; or even without substituting any if a reasonable remedy still remains.    If a statute providing a remedy is repealed while proceedings are pending such proceedings will be thereby determined, unless the legislature shall otherwise provide, and if it be amended instead of repealed the judgment announced in such proceedings must be according to the law as it then stands.    And any rule or regulation in regard to the remedy which does not, under pretense of modifying or regulating it, take away or impair the right itself, cannot be regarded as beyond the proper province of legislation.    See also to the same effect, *Green* v. *Anderson,* 39 Miss., 359; *Manufacturing Co.* v. *Keyser,* 62 Miss., 155; *Coffman* v. *Bank,* 40 Miss., 29; *Rice* v. *Wright,* 46 Miss., 680; *Musgrove* v. *Railroad Co.,* 50 Miss., 677; *Hufford* v. *Railroad Co.,* 64 Mich., 631, 8 Am. St. Rep., 859; *Improvement Co.* v. *Smith,* 85 Va., 306, 17 Am. St. Rep., 259; *Fish* v. *Railway Co.,* 82 Minn., 9, 83 Am. St. Rep., 398, 26 Am. & Eng. Ency. L., 695.

CALHOON, J., delivered the opinion of the court.

On the two points for appellants—first, that the contract for the four car loads of corn contemplated delivery on the cars at St. Louis, and not at the points of destination; and, second, that the ownership of the corn attached was in the Traders'

Elevator Company—it is enough to say that we sustain the chancellor's finding on these questions of fact. On the objection that there was a personal decree against the John E. Hall Commission Company for the balance not realized from the sale of the property attached, it need only be said that, even if we should overrule the ruling, made through the writer of this, on a point not necessary to the conclusion, in *Chamberlain-Hunt Academy* v. *Port Gibson Brick Co.*, 80 Miss., 517, 32 South., 116, 484, the holding here would be good, under Code 1906, § 536. There is no vested right to appellants in the former decision.

*Affirmed.*