BRANHAM *et al. v.* DREW GROCERY CO.*

(Division B.    Jan. 3, 1927.    Suggestion of Error Overruled Jan. 31, 1927.)

[111 So. 155.    No. 26065.]

1. JUDGMENT. *Personal judgment may be rendered against answering nonresident defendant, in attachment in chancery (Hemingway's Code, section 293).*

   Under section 536, Code of 1906 (section 293, Hemingway's Code), a personal judgment may be rendered against a nonresident defendant in attachment in chancery who has appeared and answered the bill, where complainant establishes its debt against such nonresident.

2. BILLS AND NOTES. *Funds realized from draft, credit for which was paid out on depositor's checks, are not subject to attachment as against bank, which is holder for value.*

   A bank which purchases a draft with bill of lading attached and deposits the proceeds to the account of its customer from whom it purchased the draft, and an amount equal to the existing deposit plus the draft is checked out by the depositor before notice of a creditor's claim, other than the consignee of the shipment covered by the bill of lading, is a purchaser for value, and the funds realized from the draft belong to such bank and are not subject to attachment, although the depositor make subsequent deposits sufficient to keep a balance to his credit at all times.

ON SUGGESTION OF ERROR.

3. JUDGMENT. *Statute authorizes personal judgment against defendant in attachment, in chancery, who appears, submits to jurisdiction, and contests liability (Code 1892, section 486, amended by Code 1906, section 536 [Hemingway's Code, section 293]).*

    Section 536, Code of 1906 (section 293, Hemingway's Code), amends section 486, Code of 1892, and, as amended, same authorizes a personal judgment against a defendant in an attachment in chancery, who has appeared and submitted himself to the jurisdiction of the court and contested the liability.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, p. 483, n. 87; Judgments, 33CJ, p. 1085, n. 30.

APPEAL from chancery court of Sunflower County.

HON. L. F. EASTERLING, Special Chancellor.

Attachment in chancery by the Drew Grocery Company against B. C. Branham, doing business as the Cash Grain Company, and others. From the judgment below, defendants B. C. Branham and the Farmers' Bank of Woodland Mill, Tennessee, appeal. Affirmed in part, and reversed in part.

*Chapman, Moody & Johnson* and *F. H. Montgomery,* for appellants.

Appellants contend that the court was without jurisdiction of the persons or the subject-matter of the suit and, therefore, the decree rendered is void. The bill alleges that B. C. Branham, a non-resident of the state of Mississippi, doing business as the Cash Grain Company, is indebted to the Drew Grocery Company and that The Merchants & Planters Bank of Drew, a resident of Mississippi, has in its hands effect of, or is indebted to, the said Branham; that the effects in the hands of The Merchants & Planters Bank of Drew, belonging to said Branham, are the proceeds of the draft drawn on J. M. Yeager; and that said draft was deposited with the defendant, Farmers Bank, who was acting only as agent for the collection of said draft for Branham. The jurisdiction

of the court is wholly dependent on section 293, Hemingway's Code, section 536, Code of 1906.

If the jurisdictional facts do not exist, the suit must be dismissed even though the non-resident defendant has appeared, provided he has raised the jurisdictional question. Griffith's Chancery Practice, section 484. This proposition was conclusively settled in *Werner Saw Mill Co.* v. *Sheffield,* 42 So. 876.

Appellee contends that defendant, Farmers Bank, was acting only as agent for Branham in the collection of the draft and that the indebtedness owing by the Merchants & Planters Bank of Drew to the Farmers Bank was in truth an indebtedness to B. C. Branham.

As shown by the testimony, the Farmers Bank bought the draft in good faith without notice or knowledge of any defect or infirmity in it. Whether or not by discounting this negotiable paper, placing it to the credit of the Cash Grain Company and allowing it to check out the proceeds thereof, the Farmers Bank became a holder for value is the immediate question. This question has been definitely and decisively settled in the affirmative. *Bank of Gulfport* v. *Smith,* 132 Miss. 63, 95 So. 785; *Colonial Lbr. Co.* v. *Andelusia Nat'l Bank,* 103 So. 343.

The appellee contends, however, that although the entire proceeds of the draft in question had been withdrawn from the Farmers Bank by the Cash Grain Company before the filing of the attachment suit, yet other deposits had been made so that on March 23, the date of the filing of the suit, there was a balance in the Farmers Bank to the credit of the Cash Grain Company; whether there was a credit balance on the date the Farmers Bank received notice of the attachment does not appear. The weight of authority and the generally accepted rule are that the first money in is the first money out, and that if the deposit in controversy has been drawn out, although other deposits have been made subsequent to that deposit, the bank is purchaser for value. The discounting bank becomes a purchaser for value if, before notice of

an infirmity in the paper, it pays out the amount for which credit was given to the depositor, although the depositor by subsequent deposits preserves a constant balance to his credit. *Oppenheimer* v. *Radke,* 129 Pac. 798; *First Nat'l Bank of Minneapolis* v. *M'cNairy,* 122 Minn. 215, 142 N. W. 139, Ann. Cas. 1914 D 977, also holds the law to be as here indicated. The rule, supported by abundant authority, is clearly stated in a note to *Old Nat'l Bank* v. *Gibson,* 6 A. L. R. 262 c.

Under the facts of the case at bar, the Farmers Bank was a *bona-fide* purchaser for value, without notice of any defect or infirmity, of the draft which was collected by The Merchants & Planters Bank of Orew, and the proceeds of which were attached. The Merchant & Planters Bank of Drew, the resident defendant, was indebted therefor to the Farmers Bank and not to the Cash Grain Company or B. C. Branham, manager. The resident defendant not having in its hands effects of, or being indebted to, B. C. Branham or the Cash Grain Company, the nonresident debtor, the chancery court was without jurisdiction to entertain the suit, and erred in rendering a decree in favor of the complainant.

*Ward Allen,* for appellee.

If the Mississippi bank had in its hands effects belonging to, or owed an indebtedness to Cash Grain Company, then the trial court had jurisdiction. *Werner Saw Mill Co.* v. *Sheffield,* 42 So. 876, cited in appellant's brief, is controlling on this point, but this is not the issue in this case.

The funds impressed are much more than sufficient to pay the decree and all costs, and we care little about a personal decree anyway. Our contention is that appellant, Farmers Bank of Woodland Mills, is not under the facts in this case a purchaser for value of the bill of lading, regardless of their dogmatic claim that they did purchase the bill of lading for value.

The writer of this brief propounded the cross-interrogatories shown in the deposition of Mr. Hefley, cashier of the Farmers Bank with *Colonial Lbr. Co.* v. *Andelusia Nat'l Bank et al.,* 103 So. 343, before him, and the cross-interrogatories are based squarely on the verbiage of that case. Appellant contends that the expressions of the opinion in the Andadusia case, upon which we rely, are *dicta.* If they are *dicta,* Judge COOK seems to have been very careful and scrupulous in treading unnecessary ground.

*Bank of Gulfport* v. *Smith,* 132 Miss. 63, 95 So. 785, cited and relied upon by appellants, is not in point on the facts, for in that case the entire amount of the two deposits made was drawn out on the same day and no attempt was made to show the condition of the account during the intervening period between the deposit of the check and notice of the infirmity. *Liberty Central Trust Co. of St. Louis* v. *Senton,* 104 So. 157, is not in point with the case at bar on some of the facts, but we think the case shows an intention on the part of our court to afford every reasonable protection to citizens of Mississippi in such transactions as that shown in the case at bar. In other words, in each case the inquiry will be towards whether or not, under the particular facts the discounting bank is a purchaser for value of the draft. Dogmatic statements will not be accepted to change the true nature of the transaction.

We call the court's attention to the recent article entitled "The Tri-Partitie Ownership Resulting from the Transfer of a Bill of Lading to Shipper's Order to a Discounting Bank, 26 Columbia Law Review, page 63, footnotes in this article citing *Sabel* v. *Planters Nat'l Bank of Richmond,* 61 S. W. 367, and *Wilson Grain Co.* v. *Central Nat'l Bank,* 139 S. W. 996. It would seem that the question in this case has been decided both ways. To us, however, the main point in the article is that a so-called "tri-partite ownership" of the bill of lading and the proceeds thereof is created by such transactions as

that shown in the case at bar, and that the shipper as well as the discounting bank and the consignee has an interest in the bill of lading and the proceeds thereof, and that the interest of the shipper is attachable.

Directly opposed to what appellants contend their case holds is *Nat'l Bank of Commerce* v. *Morgan* (Ala., 1921) 207 Ala. 65, 92 So. 10, 24 A. L. R. 897. The facts place this Alabama case exactly in point with the case at bar.

Argued orally by *Elbert Johnson,* for appellants.

ETHRIDGE, J., delivered the opinion of the court.

The Drew Grocery Company, a corporation, sued out an attachment in chancery against the appellant B. C. Branham, doing business under the name of Cash Grain Company, and the Farmers' Bank, domiciled at Woodland Mill, Tenn., a Tennessee corporation, and the Merchants' and Planters' Bank of Drew, Miss., alleging that on various dates since October 1, 1924, the complainant had purchased of B. C. Branham thirteen cars of corn and one car of hay, which cars were shipped to various persons in and around Drew, Miss., for the account of the complainant.

The complainant avers that the defendant Branham is indebted to him by reason of commissions due, overcharges on agreed prices, and shortages in weight on the said shipments, amounting to a total of four hundred fifty dollars, which the said Branham refuses to pay. He further alleges that the Merchants' and Planters' Bank of Drew is indebted to or has in its hands effects of the defendant Farmers' Bank, acting in the capacity of agent for the defendant B. C. Branham, for purposes of collection only; that the said amounts due by or effects in the hands of the said Merchants' and Planters' Bank of Drew, are, in effect, due to or held for the defendant B. C. Branham, and that he was merely using the Farmers' Bank as an agent for the purpose of collection for the

shipments; that Branham and the Farmers' Bank are nonresidents of the state of Mississippi, their post office address being set forth in the bill praying for process against the several defendants, waiving answer, under oath, as to all except the Merchants' and Planters' Bank of Drew; and for a decree against Branham, demanding and subjecting the indebtedness of the said defendants or the effects due to them or held for them by the Merchants' and Planters' Bank for the purposes of satisfying the debt said to be due the complainant, and for general relief. As an exhibit to the bill of complaint, the names of the consignees, dates of the shipments, numbers of the cars, and amounts of shortages and commissions, prices, etc., were set forth in detail.

The defendants filed separate answers.

The defendant Branham denied the indebtedness set forth in the bill, denying each item specifically. He denied that the Merchants' and Planters' Bank of Drew was indebted to or had in its hands effects of the said defendant, and denied that the Farmers' Bank was acting in the capacity of agent for the defendant Branham, and denied that he was the sole owner of effects in the hands of the Merchants' and Planters' Bank of Drew, or that he was the real payee in the said drafts, and he disclaimed any interest in said funds attached. He further denied that the funds in the said bank were subject to attachment, and averred that the court was without jurisdiction to hear and determine the case, and denied that it had other jurisdiction of the personal property of the defendant, and prayed to be dismissed with reasonable cost.

The defendant Farmers' Bank denied all knowledge of the transaction between the Drew Grocery Company and the complainant Branham, and denied knowledge of whether Branham was due anything to the complainant or not. He admitted that the Merchants' and Planters' Bank was indebted to it and had effects in its hands, but specifically and expressly denied that the Merchants' and Planters' Bank of Drew was indebted to it, or had

effects of the defendant acting in the capacity of agent for the complainant Branham, for the purpose of collection only, and denied that Branham then, or about the time of the filing of the suit, had any interest, legally or equitably, in any of the said funds in the hands of the Merchants' and Planters' Bank, and denied that Branham had any interest whatever in the said funds attached. This defendant also pleaded to the jurisdiction of the court.

The Merchants' and Planters' Bank of Drew filed an answer, admitting the possession of nine hundred fifty-seven dollars and forty-four cents, same being the proceeds of a draft forwarded to it by the Farmers' Bank of Woodland Mills, Tenn., for collection, with bill of lading attached, for one car of corn, shipper's order notify J. M. Yeager, of Drew, Miss., the said draft having been drawn by said defendant Cash Grain Company on the said Yeager. But the bank denied knowledge of the real ownership of said funds.

The complainant offered proof to show a number of cars shipped to its various customers between October, 1924, and March, 1925, and testified as to the said commissions that were unpaid, and certain shortages in shipments, and overcharges in price. The manager of the Drew Grocery Company testified that there was an arrangement between the Cash Grain Company and the Drew Grocery Company, by which the Drew Grocery Company was authorized to refund overcharges and settle for short weights; that it was the custom of the Drew Grocery Company to send in the orders of its customers to the Cash Grain Company, and the shipments were billed direct to the customers, but that the customers did not know the Grain Company and the Grain Company did not know the customers; and that for these sales the Grain Company agreed to pay the Drew Grocery Company two cents per bushel for all corn so sold. He testified that by a course of dealing between the Grain Company and the Drew Grocery Company, when cars

were found short, the consignee's affidavit would be taken and forwarded to the Cash Grain Company and refunds would be made, but that certain amounts were paid under the said agreement above mentioned by the Drew Grocery Company to some of its customers; that order shortages embraced in the account had not been paid by the Drew Grocery Company; neither had they been paid by the Cash Grain Company. These unpaid amounts were excluded from the account by the decree of the court.

The only testimony for the defendants was the testimony of the cashier of the Farmers' Bank of Woodland Mills, Tenn., who handled the drafts of the bank. He testified that he bought the draft in question outright, and placed the proceeds to the credit of Branham or the Cash Grain Company, on the books of the bank; that the bulk of the amount of the draft was drawn out, by check, the same day it was credited on the books of the bank to Branham; that in a couple of days another draft was drawn on said funds. He testified that the balance on the day previous to the purchase of the draft was one hundred forty-seven dollars and eight cents.; that the amount of the draft deposited was nine hundred fifty five dollars and five cents; that on March 14th, seven hundred ninety-three dollars and ninety-six cents was checked out of said account, leaving the balance to the account on that date of three hundred eight dollars and twenty-seven cents; that on March 16th the Farmers' Bank bought from the Grain Company a draft for nine hundred fifty-six dollars and eighty cents, and the proceeds of same were placed to their credit; that the same day they checked out one hundred fifty-nine dollars and eighty-six cents, leaving their balance at the close of business on March 16th, one thousand one hundred five dollars and twenty-one cents; that on March 17, 1925, the Farmers' Bank bought of the Grain Company, through Branham, a draft for eight hundred fifty-three dollars and twenty-five cents, and that the proceeds of same were placed to their credit on account, and that on the same

day they drew out one thousand three hundred seventy-four dollars and eighty-three cents, leaving a balance at the close of business that day of six hundred eighty three dollars and sixty-three cents; that on March 18th the Grain Company, through Branham, drew checks to the amount of two hundred fifty-one dollars and eighty-six cents, leaving their balance on that day four hundred thirty-one dollars and seventy-seven cents; that on March 19th, the Farmers' Bank purchased from the Cash Grain Company, through Branham, two bills of lading, the net proceeds of which amounted to one thousand seven hundred fifty-four dollars and eighty cents, which was placed to the credit of the Grain Company; that they drew against their account on that date three hundred ninety-nine dollars and five cents, leaving their balance at the close of business March 19, 1925, one thousand seven hundred eighty-seven dollars and fifty-two cents.; that on March 20th, they drew checks against their account for four hundred thirty-nine dollars and ninety-five cents, leaving their balance at the close of business on March 20th, one thousand three hundred forty-seven dollars and fifty-seven cents; that on March 21st, they purchased a draft with bill of lading attached amount ing to one hundred sixty-two dollars and thirty-three cents which was placed to the credit of the said Grain Company; that on the same date they drew checks against their account for one hundred ten dollars and fifty-six cents, leaving their balance at the close of business March 21st, one thousand three hundred ninety-nine dollars and thirty-four cents; that on March 23d, the Grain Company deposited a check in the Farmers' Bank for nine hundred sixty dollars and four cents, and that they drew checks against their account that same day to the amount of seven hundred sixty-four dollars and thirty-one cents, leaving their balance at the close of business on that day of one thousand five hundred ninety-five dollars and seven cents.

The first notice the bank had of the complainant, Drew Grocery Company, was on the 23d of March, which was the day the attachment was served.

The chancellor rendered a personal decree against Branham for one hundred seventy-three dollars and seventy-nine cents, and decreed that the indebtedness of the defendant Merchants' and Planters' Bank of Drew to the defendant Farmers' Bank be subject to the demand of the complainant to the extent of the aforesaid amount said to be due by the defendant Branham to the complainant, but not to exceed the sum of three hundred eight dollars and twenty-seven cents. From this judgment both the Farmers' Bank and Branham appealed to this court.

We think the testimony warranted the chancellor in granting a personal decree against Branham, he having made an appearance in the suit and contested liability, subjecting himself to the personal judgment. See *John E. Hall Commission Co.* v. *Foote et al.*, 90 Miss. 422, 43 So. 676, where, in the syllabus, the rule is stated as follows:

"Under Code 1906, section 536, providing for attachments in chancery against nonresident debtors, a court of equity may, where a nonresident defendant has appeared and answered in the suit, render a personal decree against him for the balance of complainant's debt not realized by sale of the attached property."

See, also, *Dinwiddie* v. *Glass et al.*, 111 Miss. 449, 71 So. 745; *Regina Flour Mills Co.* v. *Lehman*, 117 Miss. 575, 78 So. 515. Therefore the judgment as to Branham will be affirmed.

In reference to the appeal of the Farmers' Bank it will be seen from the statement of the facts that there is no dispute about the bank having purchased the draft, the proceeds of which were attached in this suit; and there is no contention that this shipment, covered by the draft and bill of lading, was defective, or that the complainant had any interest in this particular shipment.

Its suit of attachment was based upon indebtednesses on other shipments. Therefore the bank did not stand in the shoes of the shipper as guarantor of the soundness of the grain. *Searles Bros.* v. *Smith Grain Co.,* 80 Miss. 688, 32 So. 287. There is, furthermore, no dispute about the fact that the proceeds of the draft attached to the bill of lading were deposited to the credit of Branham or the Grain Company, and that, on the date the attachment was served, enough checks had been checked against the account to more than take up the balance to the credit of the shipper on the date of the deposit. It is true that deposits were subsequently made, and that, at no time after the deposit of the proceeds of the draft to the credit of the Grain Company, was the balance of said account less than three hundred eight dollars. The question then turns somewhat upon whether or not the court will apply the doctrine that the first money in the bank to the credit of the depositor is to be the first to be paid out on his checks.

In the case note to *Old National Bank* v. *Gibson,* 105 Wash. 578, 179 P. 117, 6 A. L. R. 247, at page 262 of the A. L. R., in the note discussing the question, it is said:

"Where the one making the deposit of the proceeds of a negotiable instrument upon presenting it to the bank has a regular account upon which he is drawing checks and making deposits from day to day, and the proceeds are credited in such an account, it frequently becomes difficult to decide whether or not he has drawn all or even a part of the proceeds of the particular instrument in question. The courts have, for this purpose, adopted the maxim that 'the first money in is the first money out.' That is, a man may draw out an amount of money equal to the amount he had in the account when he deposited the proceeds, not including the credit of the proceeds, and he will not be considered as having drawn upon the proceeds; but whatever amount he draws in excess of that amount will be held to have been drawn upon the proceeds, even though by later deposits he has

kept his account at all times good to an amount equal to or far in excess of the amount of the proceeds. And the depositor is held to have exhausted the credit obtained by the instrument when he has drawn out an amount equal to the amount of its proceeds, plus what he had in the account when the credit was entered, even though before or after drawing, he deposits more than he draws.

"It has been held that a bank which places the proceeds of a negotiable instrument to the credit of the holder in his regular deposit account and honors his checks to the full amount of his account as it stood at the time of the deposit, including the proceeds, before it has notice of any infirmity in the paper, is a holder in due course even though, because of subsequent deposits, there never was a time when there was not in the account sufficient funds to redeem the instrument, the holdings being based upon the theory that 'the first money in is the first money out.' *City Deposit Bank* v. *Green* (1906), 130 Iowa, 384, 106 N. W. 942 (seen quotation from this case, *infra*); *Fox* v. *Bank of Kansas City* (1883), 30 Kan. 441, 1 P. 789; *Dreilling* v. *First National Bank* (1890), 43 Kan. 197, 23 P. 94, 19 Am. St. Rep. 126; *Farmers' & M. Bank* v. *Quasebarth* (1919), 104 Kan. 422, 179 P. 300; *First National Bank* v. *McNairy* (1913), 122 Minn. 215, 142 N. W. 139, Ann. Cas. 1914D, 977 (see quotation *infra*); *Merchants' Nat. Bank* v. *Santa Maria Sugar Co.* (1914), 162 App. Div. 248, 147 N. Y. S. 498, affirmed in (1917) 220 N. Y. 732, 116 N. E. 1061; *United States Nat. Bank* v. *McNair* (1894), 114 N. C. 335, 19 S. E. 361; *United States Nat. Bank* v. *McNair* (1895), 116 N. C. 551, 21 S. E. 389; *Standing Stone Nat. Bank* v. *Walser* (1913), 162 N. C. 53, 77 S. E. 1006; *Northfield Nat. Bank* v. *Arndt* (1907), 132 Wis. 383, 112 N. W. 451, 12 L. R. A. (N. S.) 82."

The majority of the courts of this country hold to this doctrine, and it seems to be the most just and reasonable rule to apply to a situation like that before the court now. If, as contended by the appellee, the bank could be attached for any debt due by its depositor, as long as such

depositor had a balance in the bank there could be no
settled dealing with checks and drafts, and attachments
in foreign jurisdictions could be sued out long periods
of time after the deposits were made.

In the case note to *National Bank of Commerce* v.
*Morgan,* 24 A. L. R. 903, it is said:

"The doctrine announced in the earlier annotation—
and which is contrary to the decision in *National Bank* v.
*Morgan* (reported herewith) *ante* [24 A. L. R.] 897, up-
holding the character of the bank as a holder in due
course where, prior to notice of any infirmity, it has paid
a sum equal to or greater than the amount of the deposi-
tor's account, including the amount of the paper in ques-
tion at the time the paper was deposited, although there
never was a time when there was not in the account suffi-
cient funds to redeem the instrument—is approved in
*State Savings Bank* v. *Krug* (1920), 108 Kan. 108, 193
P. 899. It does not clearly appear, however, from the
report of this case, whether the balance in favor of the
depositor fell below the amount of the note until a few
days before the note was sent for collection, when the
bank learned for the first time of a defense."

In *Colonial Lumber Co.* v. *Andelusia Nat. Bank,* 138
Miss. 566, 103 So. 343, it is held that:

"A bank which purchases a draft for the price of a
shipment of goods, drawn by seller and consignor on
buyer and consignee of goods, occupies, as to the con-
signee, the situation of the consignor only as to that ship-
ment; so that though bank be not a *bona-fide* holder for
value of the draft, the consignee after paying it could
recover no part of its proceeds, as against the bank, for
losses from defects in goods in shipments prior to that
covered by the draft."

In *Bank of Gulfport* v. *Smith,* 132 Miss. 63, 95 So. 785,
it was held that, when a bank receives for deposit a
check payable to a depositor and drawn on another bank,
and permits the depositor to withdraw the amount of the
check before notice of any infirmity therein, it becomes

a holder for value.  In that case the original deposit was made on a deposit slip containing a notice that the bank credited the deposit to his credit subject to final payment, but the court held that subsequently permitting the depositor to withdraw the funds entirely before payment of the check and on the day of the deposit, the bank became a purchaser for value without notice, and entitled to protection.

Applying these principles to the case before us, we think the complainant failed to sustain his attachment against the funds in the hands of the bank of Drew, and that the court was in error in rendering judgment impounding these funds to pay the judgment rendered against Branham.  Therefore the judgment as to the Farmers' Bank is reversed and judgment entered here releasing the attachment and dismissing the appeal as to the Farmers' Bank and the bank of Drew.

*Affirmed in part, and reversed in part.*

### On Suggestion of Error.

It is contended on the suggestion of error that the court erred in holding jurisdiction to render a personal decree against Branham, because of the case of *Louis Werner Sawmill Co.* v. *Sheffield,* 89 Miss. 12, 42 So. 876, in which case it was held that, where, in a suit in attachment to subject certain personal property of a nonresident defendant, alleged to be in the hands of a third party, to the payment of an alleged indebtedness due complainant, to be ascertained by an accounting, complainant fails to show that there was any property belonging to the defendant in the hands of the third party when the attachment was served, the court obtained no jurisdiction to entertain the suit and order a statement of accounts. This decision was rendered in the supreme court, February 11, 1907.  The Code of 1906 went into effect November 19, 1906, and therefore it is evident that this opinion was rendered under the provisions of the Code of 1892, section

145 Miss.—41.

486, which statute did not authorize a personal judgment, it reading as follows:

"The chancery court shall have jurisdiction of attachment suits against any nonresident, absent or absconding debtor, whether the debt be legal or equitable, who has lands and tenements within this state, or against any such debtor and persons in this state who have in their hands effects of, or are indebted to, such nonresident, absent or absconding debtor."

Section 536, Code of 1906 (section 293, Hemingway's Code), amends the Code of 1892, and in the last sentence of the section as it now stands, it is provided as follows:

"The court shall give a decree *in personam* against such nonresident, absent or absconding debtor if summons has been personally served upon him, or if he has entered an appearance."

We think the amendment to this section authorized the court, when the defendant appeared and contested the attachment suit, to enter a judgment *in personam.*

In the case of *John E. Hall Commission Co.* v. *Foote et al.,* 90 Miss. 422, 43 So. 676, cited in the main opinion, it is held that the court may render such personal judgment when the defendant has appeared and contested the liability.

We think there is no good reason to hold, where the defendant has appeared and submitted himself to the jurisdiction of the court, and contested with complainant the liability, and where it is manifest, after a complete hearing on such personal appearance, that he does owe the complainant, that such complainant should be denied the right to recover.

We think the amendment to the statute referred to changed the law, as announced in *Werner Sawmill Co.* v. *Sheffield, supra,* and the suggestion of error will be overruled.

*Suggestion of error overruled.*