MISSISSIPPI COTTONSEED PRODUCTS CO. *v.* CANAL BANK & TRUST CO. *et al.*

(Division A. Feb. 18, 1935. Suggestion of Error Overruled March 18, 1935.)

[159 So. 404. No. 31355.]

**Moody & Johnson,** of Indianola, for appellant.

Cooper & Thomas, of Indianola, for appellees.

**Cook, J.**, delivered the opinion of the court.

Appellant, Mississippi Cottonseed Products Company, instituted this suit by way of an attachment in chancery against the Canal Bank & Trust Company, of New Orleans, La., J. S. Love, Superintendent of Banks in charge of the liquidation of the Bank of Indianola, and certain resident defendants alleged to be indebted to the said Canal Bank & Trust Company. Upon the execution of a surety bond conditioned to pay the amount of any decree that might be rendered against the said nonresident bank, the defendants, who were alleged to be indebted to it, were discharged, and the trial of the cause resulted in a decree dismissing the bill of complaint as to the remaining defendants.

The facts disclosed by the record, which are undisputed, are substantially as follows: On December 11, 1931, the appellant, trading under the name of Sunflower Cotton Oil Company, deposited with the Bank of Indianola three drafts for two hundred dollars each, with bills of lading attached, drawn on E. T. Allen & Co., of Atlanta, Ga. At the bottom of the original deposit ticket upon which these three items were listed were the words, "Credited subject to rules and regulations on back of

duplicate," while on the back of the duplicate ticket it was provided, among other things, that all checks and drafts were credited subject to payment, and that if the collecting agents or correspondents should convert the proceeds or remit in checks or drafts which were dishonored, the amount for which credit had been given would be charged back to the owner or depositor.

In the consideration of the questions presented, we will accept the statement of counsel for the respective parties that the drafts in question were deposited for "collection" or "collection and credit," which under the facts of this case are in legal effect the same. When these three drafts were deposited, the appellant was given immediate credit for the amount thereof, and they were forwarded by the Bank of Indianola to the Canal Bank & Trust Company, its New Orleans correspondent, for collection. The items were received by the Canal Bank & Trust Company on December 14, 1931, and were forwarded to the First National Bank of Atlanta, for collection. They were received by the Atlanta bank on the morning of December 16, 1931, and were presented to, and paid by, the drawee on that date. On the same day the Atlanta bank credited the Canal Bank & Trust Company with the proceeds of the drafts and notified it of that fact, and on December 29, 1931, the Canal Bank & Trust Company in turn applied the amount of said drafts as a credit on a note owing by the Bank of Indianola to it.

On December 16, 1931, the same day the drafts were collected by the Atlanta bank, the Bank of Indianola was closed for liquidation. In the meantime, after the amount of the drafts in question was placed to the credit of the appellant with the Bank of Indianola on December 11, 1931, by applying the rule, "the first money in is the first money out," the entire amount of the drafts was checked out. But additional deposits, largely in excess of appellant's balance on December 11, 1931, after the drafts were credited to it, were made, and at the close

of business each day from December 11, 1931, until said bank was closed for liquidation, the account of the appellant disclosed an indebtedness owing to it by the Bank of Indianola largely in excess of the aggregate amount of the drafts.

The record discloses that the Bank of Indianola did not open for business after December 15, 1931, and it is admitted that it was closed for liquidation on December 16, 1931, the day the drafts in question were collected. It is asserted throughout appellant's brief, and not controverted by appellees, that the drafts were collected after the said bank was closed for liquidation, and therefore that the relation of principal and agent existed between appellant and appellees, at the time the drafts were collected, will be treated as an accepted fact, unless, as contended by appellees, that relation was terminated when the Bank of Indianola, under the doctrine of "the first money in is the first money out," permitted the appellees to withdraw the amount of these deposits. To state the contentions of the respective parties in another way, the appellant contends that when the Bank of Indianola credited the drafts subject to payment and advanced an amount equal to the amount of the drafts, it only acquired a lien on the drafts and the proceeds thereof, which was discharged by subsequent deposits equal to and in excess of the amount of the drafts; while the appellees contend that when the bank advanced to appellant the amount of the drafts, before the collection thereof, it became a purchaser for value of the drafts and acquired the ownership thereof.

Under the doctrine that "the first money in is the first money out," which is recognized by numerous decisions of this court, it was clearly established that the entire proceeds of the drafts were withdrawn before the collection thereof, and it is equally well established that continuously from the time the drafts were deposited until the bank closed for liquidation, and until the drafts were

collected, the appellant, by additional deposits, maintained a balance in the bank in excess of the amount of the drafts. That the bank of deposit acquired only a lien on the drafts and proceeds thereof when it accepted the drafts for collection, or collection and credit subject to payment, and permitted the withdrawal of the amount of the drafts before collection thereof, is a necessary conclusion from the language of the court in the case of Love v. Kraft-Phœnix Cheese Corp., 162 Miss. 460, 139 So. 393, 394, wherein it was said that: ''When commercial paper is deposited with a bank for collection only, and thereafter the bank cashes checks drawn against the paper deposited before it has been collected, the bank thereby acquires either (a) the ownership of the paper deposited, or (b) a lien thereon for the amount advanced the depositor. While there are authorities to the contrary, the first of these results is not, but the second is, in accord with the law of agency, under which an agent in possession, by virtue of his agency, or property belonging to his principal who advances money to his principal for purposes connected with the agency, acquires, not the ownership of the property, but a lien thereon. But aside from this, 'It is a well-established general rule that a bank receiving paper for collection has a lien thereon for a debt of the depositor of such paper to the bank, and is entitled to retain such paper as security for the debt, in the absence of contract express or implied, to the contrary.' 6 Michie on Banks & Banking, p. 25, sec. 19.''

It seems to be the contention of the appellees that by the language above quoted the court did not intend to hold, and did not hold, that the bank which had made advances against the draft acquired only a lien thereon and not the ownership thereof, for the reason that it was there held that, upon the collection of a draft after the bank was closed for liquidation the proceeds thereof to the extent of money previously advanced thereon be-

came a part of the assets of the failed bank. That holding does not in any way militate against the view that a bank making advances against a draft accepted for collection and credit acquires only a lien on the draft or the proceeds thereof for the repayment of the advances, as the proceeds of a draft which were subject to such a lien would become a part of the assets of the collecting bank by virtue of its lien.

The only remaining question is whether or not, under the circumstances of this particular case, the proceeds of the drafts when collected after the bank was closed for liquidation became a part of the assets of the closed bank, or were the property of the appellant free of any lien in favor of the bank to reimburse itself for advances made against the drafts. The record discloses that continuously from the time the drafts were deposited until they were collected, the appellant, by means of additional deposits, maintained at all times a balance in the bank of deposit in excess of the amount of the drafts. And where, at the time of the collection of a draft against which advances have been made, or when it is returned unpaid, the bank is indebted to the depositor in an amount equal to or in excess of the amount of the draft, thereby fully protecting the bank against any loss by reason of advances, we think the lien should be held to have been discharged as a result thereof. Where such facts exist, and, as in the case at bar, the relation of principal and agent continues in force as a result of the collecting bank being closed for liquidation before collection of the draft, we think the proceeds of the draft belong to the depostor and may be recovered from the collecting agents. This view is not in conflict with the holding of the court in the case of Branham v. Drew Grocery Co., 145 Miss. 627, 111 So. 155, wherein it was expressly pointed out that the uncontradicted proof showed that the draft in question was purchased outright by the bank of deposit,

which purchase was consummated by permitting withdrawals of the amount of the draft.

The decree of the court below will be reversed, and a decree will be entered here for the appellant for the amount of the three drafts.

Reversed, and decree here.