Unable to accept the reasoning set forth in the majority opinion, I must state my views to the contrary.
Significantly the initial pleading filed by Bounds against Penrod is entitled "Bill of Complaint and Attachment in Chancery". The first numbered paragraph avers that Penrod is a Louisiana corporation on whom process cannot be had in Mississippi. Then he names the garnishee-defendants and charges that they are qualified to do business in Mississippi and "have property and effects" of Penrod in their possession. In his prayer, he asked that the garnishee-defendants' property be "attached" and "sold for the satisfaction" of Bounds' claim. Certain of the garnishee-defendants answered, denying having any of Penrod's effects but averred having "a continual contractual relationship with Penrod . . . and from time to time" they sometimes are indebted to Penrod on "contract or open account".
Clearly the suit by Bounds is an "attachment" action as labeled by him and obviously is based upon Mississippi Code Annotated §11-31-1, et seq. (1972), as the statutes were in 1978 when the suit was filed.[1] In responding to the attachment suit against it, Penrod asserted that the "Mississippi attachment *Page 934 
in chancery statutes, Mississippi Code Annotated sections 11-31-1
et seq. (1972) are and have been declared unconstitutional", and that, therefore, the garnishee-defendants were improperly made "garnishee" defendants.
Subsequent to Penrod's answer challenging the constitutionality of our attachment statutes as they then existed, Penrod never relented in asserting at every reasonable opportunity the unconstitutionality of those statutes.
In its brief filed herein, Penrod points out that the statutes (pre-1980) are unconstitutional on their face because the statutes allow for issuance of an attachment writ by Bounds' unilateral action without any opportunity being given to Penrod to contest the propriety of the attachment before issuance. Further, our statutes are unconstitutional because they allowed issuance of such a writ without having the matter submitted to any disinterested judicial officer and even without being required to post any security. These defects render the attachment statutes void and a nullity according to the pronouncements of the United States Supreme Court in Fuentes v.Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
Two aspects of this interesting case stand out. First, the lower court lacked subject matter jurisdiction because there was no res (of the garnishee-defendants) located in Mississippi to be the proper factual basis of an attachment suit. Second, our attachment statutes, the vehicle carrying Bounds' cause, are on their face, unconstitutional. I know of no other judgment than the one before us (and none has been cited) where this Court or any other Supreme Court has affirmed the lower court's judgment, derived by attachment process, premised upon the tenuous grounds of no subject matter jurisdiction, lack of res, plus the other infirmity: unconstitutional statutes as the basis on which the process was initiated.
For the reasons stated above (there being no res, and the attachment statute being unconstitutional and therefore a nullity) the whole proceeding as "attachment in chancery" could have no legal force or effect. As stated above, Penrod from the very beginning asserted the unconstitutionality of the attachment statutes as an issue from which they never relented or conceded. The attachment statute itself, the point of beginning of the entire proceeding conducted below, being invalid resulted in an abortion of the whole process leaving it without any efficacious means whereby a valid award of damages could be made in Bounds' favor. It is much like a train on a railroad track — if the engine car is derailed or becomes inoperable there is nothing left to pull the train. Here the attachment (mechanism) was the intended engine of the whole proceedings but, being unconstitutional, left the suit or action without any pull or force to carry it along.
In view of the above, the following question becomes decisive: How can an unconstitutional chapter on attachment, §§ 11-31-1, et seq., supra, be rightly construed as a basis for Bounds' cause of action? It just cannot be done without departing from logic and adherence to sound legal principles.
This being the status of the matter, the underlying feature of subject matter jurisdiction must fail and be of no effect whatever. Penrod's entry of appearance was limited and specifically reserved the issue of "subject matter jurisdiction". As asserted by the garnishee-defendants, they had a "continual contractual relationship with Penrod" — protection of this relationship prompted Penrod to enter its limited (special) appearance and thereby gain dismissal of the garnishee-defendants. Penrod's limited appearance under these circumstances in no way established subject-matter jurisdiction in the lower court and in no way breathed life into or rehabilitated our unconstitutionally dead statutory basis of chancery attachment: §§ 11-31-1, et seq., supra.
Other features of attachment and cases on this procedure should be considered here.
The purpose of the Mississippi attachment *Page 935 
in chancery statutes[2] is to provide a mechanism whereby a party to whom an indebtedness is owed or who has some other claim against a nonresident owning property located within the confines of the state of Mississippi may attach that property in rem,
and present his case in chancery on the underlying obligation. The statute is very broad in its coverage allowing such attachment any time a plaintiff has a "demand founded upon any
indebtedness. . . ." § 11-31-1, supra (emphasis added). Language in some Mississippi cases is somewhat unclear as to whether the chancery court's power derives solely from the statutory authorization or whether such attachment proceedings are inherent in the court's equitable powers.[3] Nonetheless, as previously indicated, the requirements and proceedings are controlled by statute.
Attachment in chancery procedure has been traditionally viewed by this Court as a proceeding in rem.[4] Mid-South PavingCompany v. State Highway Commission, 197 Miss. 751, 21 So.2d 646 (1945).
The statute § 11-31-1, supra, provides three basic requirements in order to activate its provisions giving the chancery court jurisdiction. Since these requirements are jurisdictional in nature, the failure or absence of any one requirement necessitates dismissal of the suit. Griffith, Mississippi Chancery Practice, § 484 (2d Ed. 1950). First of these requirements is a proper "demand" by the plaintiff which may be "founded upon any indebtedness." Secondly, the statute requires that such demand be against a nonresident debtor. Thirdly, for operation of the statute to vest jurisdiction in chancery court, the nonresident debtor must either have lands or tenements within the jurisdictional limits of the state, or persons in the state must "have in their hands effects of or are indebted to such nonresident, . . . ." § 11-31-1, supra.
As an axiom derived from the above postulates, this Court has traditionally required that any debt in the hands of a third party present within the state which is sought to be attached must be one which is owing in praesenti. Ford v. Mutual LifeInsurance Company of New York, supra; York v. York, 187 Miss. 465,193 So. 330 (1940).
The requirement that the garnishee-defendant have in his hands at the time of the issuance of service, property, debts, or effects of the principal defendant forms the jurisdictional basis for this action as an in rem proceeding. The sina qua non
required by the statute is the existence of a res upon which to operate. Martin v. Adams Mercantile Co., 203 Miss. 177,33 So.2d 633 (1948), was filed under the chancery attachment statute, and the defendant appeared in court claiming that he did not own the property (real estate) in question. The Court noted that it lacked jurisdiction to hear the case if the property sought to be attached did not belong to the defendant. Likewise,Louis Werner Saw Mill Company v. Sheffield, 89 Miss. 12, 42 So. 876 (1906), held that the burden of proof was upon the plaintiff to establish the existence of such effects and their ownership, and that "the Court was without jurisdiction to entertain *Page 936 this suit, and there should have been no statement of account ordered. There being no jurisdiction shown, all the proceedingsshould be dismissed." Id., at 18-19, 42 So. 876 (emphasis added).
In Duvall v. Duvall, 224 Miss. 546, 80 So.2d 752 (1955), we addressed ourselves to a definition and discussion of the nature of subject matter jurisdiction. In Duvall, Mrs. Duvall was appealing from a denial of separate maintenance. On cross-appeal, Mr. Duvall alleged as error the lower court's property division. He contended that, since the chancellor had found Mrs. Duvall not to be entitled to separate maintenance, the chancellor only possessed jurisdiction to dismiss the case. This Court, speaking through Justice Gillespie, discussed the nature and basic characteristics of subject matter jurisdiction:
 It is a universal rule of law, recognized by the text writers and every court dealing with the question, that parties cannot, by consent, give a court, as such, jurisdiction of subject matter of which it would otherwise not have jurisdiction. Jurisdiction in this sense cannot be increased or diminished by the consent of the parties. 14 Am.Jur., Courts, Sec. 184; 21 C.J.S., Courts, Section 109, Holloman v. Holloman, 13 Miss. 559; Switzer v. Benny, 94 Miss. 209, 48 So. 401; Hauger, et al. v. Hauger, 376 Pa. 216, 101 A.2d 632; Griffith, Miss. Chancery Practice, Sec. 22.
224 Miss. at 552, 80 So.2d at 754.
When suit is brought in chancery under the attachment in chancery statutes, it is brought under a statutory procedure by which the chancery court can obtain jurisdiction over cases not normally within its province, and the court may adjudicate a class of cases over which it normally has no authority whatsoever. The wording of the statute itself and the interpretation which this Court has given the statute indicates that there are three jurisdictional requirements. CrescentPlywood Company v. Lawrence, 305 So.2d 343 (Miss. 1974), states:
 Under this section [11-31-1 et seq.], Judge Griffith comments on the requisites to jurisdiction in V. Griffith, Mississippi Chancery Practice § 484, at 489-90 (2d ed. 1950):
 "The proceeding is one primarily in rem; and in order to give jurisdiction in chancery by attachment against a nonresident there must exist the following factors: (1) The nonresidence of the debtor; and, (2) either (a) that he owns land in this state; or (b) that there are effects belonging to him in the hands of a person in this state, or (c) that there is some person in this state indebted to the said non-resident debtor, and (3) the issuance of the proper process against the land, or effects, or debt, as provided by the statute, so as to bring the res under the control of the court; and it is well settled that when the jurisdictional facts do not exist the proceedings must be dismissed, even though the nonresident defendant has appeared, provided that in his appearance he raise at the outset the defect as to jurisdiction, and thus does not waive it." (Footnotes omitted). (Emphasis added).
 As was stated in York v. York, 187 Miss. 465, 480, 193 So. 330, 333 (1940):
 "In order to sustain an attachment in chancery [against a nonresident defendant] there must be a debt owing from the non-resident, and there must be effects in the hands of the resident defendants, or lands must be attached in the manner provided by the statute to give the court jurisdiction."
Id., at 346-47.
It is necessary that the above-mentioned jurisdictional requirements establishing the subject matter jurisdiction of the chancery court exist at the time of the filing of the action. Subject matter jurisdiction must be proper at the time of filing the lawsuit. Minn. and St. Louis Railway Co. v. Peoria and P.U.Railway Co., 270 U.S. 580, 46 S.Ct. 402, 70 L.Ed. 743 (1926);Duvall v. Duvall, supra; Euclid-Mississippi v. Western Casualtyand Surety Co., 249 Miss. 547, 163 So.2d 676 (1964). *Page 937 
Searching the record before us fails to reveal the existence of a necessary jurisdictional fact because nothing in the record establishes that, at the time of the filing of Bounds' attachment in chancery, there was any indebtedness owing in praesenti to defendant Penrod by any of the garnishee-defendants.
This question (of indebtedness owing in praesenti) was neither briefed nor even addressed in the original briefs submitted by the parties in this appeal. In view of the fact that such a failure was probably induced by reliance upon the federal district court's construction of the statute[5] as allowing debts accruing after the filing of an attachment suit to be attached, we requested, received and have considered additional briefs on the question of whether there was owing, inpraesenti, any obligation(s) by the garnishee-defendants at the time of the filing of the suit, and on the question of the effect of the absence of such a presently-owed debt.
From the above-cited cases, it is clear that the mere fact that Bounds and the principal defendant, Penrod, agreed as to the dismissal of the five garnishees who had answered denying any and all indebtedness to the principal defendant, did not constitute a waiver of the jurisdictional requirement set forth in the statute for the purpose of establishing subject matter jurisdiction in chancery court. As previously noted, requirements of subject matter jurisdiction may not be waived even with the consent of the parties. Therefore, Bounds' failure to come forward with proof establishing the existence of the alleged indebtedness at the time of the filing of the complaint and the issuance of process, results in the failure of subject matter jurisdiction as to those five answering garnishee-defendants.
A more difficult question is posed with respect to the three garnishee-defendants who did not file an answer to Bounds' bill of complaint and attachment in chancery. Normally it is true that the failure of a defendant to respond to allegations in a complaint results in those allegations being taken as true. Griffith, Mississippi Chancery Practice, § 259 (2d Ed. 1950). However, it is important to note that Bounds did not move for a decree pro confesso. His failure to move for a decree pro confesso upon the failure of the three garnishee-defendants to answer, coupled with the joint motion to dismiss all garnishee-defendants which expressly dispensed with the need foradditional pleadings from the garnishee-defendants, must be taken as an admission by Bounds of the lack of substantiality to the charges set forth in the original bill of complaint as to the existence of a present indebtedness owed by the garnishee-defendants to Penrod, the principal defendant. This being the case, the jurisdictional basis for the original attachment lawsuit has collapsed. There is no res upon which an attachment may operate, and hence the court is without jurisdiction as such jurisdiction is set forth in the statute. With respect to this proposition, it is important to note that the chancellor's opinion (from which Bounds did not cross-appeal) in the case negates the existence of such a debt. Excerpted from his opinion is the following:
 In Mississippi Chemical, large sums of money belonging to the Defendant were bound. In the case now under consideration, no funds belonging to Penrod were ever bound in the hands of the garnishee-defendants. This fact is uncontradicted in the record and is evidenced by the sworn Answers by the garnishee-defendants. . . . Further, there is no question about the binding of any sums which resulted from contracts entered into outside the State of Mississippi because no sums were ever bound. (Emphasis supplied).[6] *Page 938 
According to our established case law, it is inescapable that the chancery court lacked subject matter jurisdiction by virtue of Bounds' failure to establish the existence of a present indebtedness owing by the garnishee-defendants to the principal defendant (Penrod) at the time of the issuance of the process upon the garnishee-defendants. Such a failure to meet the jurisdictional requirements of the attachment in chancery statutes requires reversal and dismissal of the case for want of subject matter jurisdiction regardless of the constitutionality of the attachment in chancery statutes.
It has been contended that language in Branham v. Drew GroceryCo., 145 Miss. 627, 111 So. 155, suggestion of error overruled (1927), possibly lends itself to a different construction. Nonetheless, the operative facts of Branham are so radically different from those in the case at bar as to render the dicta inBranham inapplicable to the instant case. In Branham, the garnishee-defendant bank admitted its possession in this state of the res in question (proceeds of a draft), but denied knowledge of the true ownership of those proceeds. An account with the garnishee-defendant bank was maintained by the principal defendant which held a balance of $1,595.07 on the date of attachment. In the instant case, no garnishee-defendant admitted any indebtedness and the res asserted by Bounds did not, in fact, exist.
Under the majority opinion, even if the chancery court did not have subject matter jurisdiction, § 147 of the Mississippi Constitution of 1890 precludes reversal by this Court solely on that basis. They have misconceived the nature of subject matter jurisdiction and the application of § 147. § 147 applies only
where the lack of jurisdiction results from a case being brought in the wrong court with respect to questions of law versus questions of equity.
By means of hypothetical illustration: P, the victim of a tort, may erroneously bring a tort action seeking recovery for damages in chancery court. If no objection is made and the case is heard and decided upon the merits, the fact that P should have brought his action (an action at law) in circuit court will not constitute grounds for reversal by this Court under § 147. The critical factor in this analysis is that the tort actioncould have been properly brought in circuit court under the facts of the case and the law applicable to those facts. This is the proper interpretation of the application of § 147. In such a case there is missing no essential required fact enabling a court to act. In such a case, the judicial process operates upon facts, but in the case before us the entire proceeding depended upon proof that some garnishee-defendant (Exxon, et al.) was indebted to or had some property or effects of the principal defendant: Penrod. Not one scintilla of such proof was ever offered.
Thrust of the instant case is the in rem statutory procedure of attachment, and nothing changed it from an attachment suit even though Bounds' was asserting, as an underlying claim, damages for a tort. Nothing being available to attach, this attachment proceeding could not have properly been brought in either chancery or circuit court. Likewise, had the parties moved for transfer to circuit court, such motion would have been properly denied because the jurisdictional requirements of the statute were not met. The only proper action for the court would have been dismissal since, under these facts and circumstances, it is clear that § 147 is inapplicable. The instant case does not involve a mistake of proper jurisdiction, but rather the total lack of jurisdiction.
Appellee cites Minter v. Hart, 208 So.2d 169 (Miss. 1968), as authority for the proposition that § 147 of the Mississippi Constitution precludes reversal. Close and careful *Page 939 
scrutiny of both our opinion, the original record, and the briefs in Minter reveals that it is clearly distinguishable from the case at bar and not controlling. Both pleadings and proof inMinter made out a prima facie case for an attachment suit atlaw under §§ 2675-2728 of the Mississippi Code of 1942 (the precursor of our present attachment at law statute). In Minter
the pleadings precisely charged, the answer admitted, and the proof established that all parties were resident citizens of Mississippi, and the res (land), subject of the attachment, was within Mississippi. The complainant merely brought suit in the wrong court, i.e. chancery.
In the instant case, the pleadings and proof would not have made a prima facie case for attachment in either chancery or circuit court. Therefore, § 147 of the Mississippi Constitution does not apply.
Thus it can be seen that § 147 applies when an action is mistakenly filed in the wrong court (law vs. equity). The present suit was filed in the proper court under correct procedures but Bounds failed to establish the statutory jurisdictional requirements necessary to give the chancery court the power to go to the merits of Bounds' tort claim. Bounds' averment of an indebtedness owing to Penrod was without factual basis, and thus he failed to fulfill the statutory jurisdictional requirements.Mississippi Power Light Co. v. Ross, 168 Miss. 400,150 So. 830 (1934). The majority opinion will be construed as allowing plaintiffs to indulge in the rankest type "forum shopping" never contemplated under § 147, supra, or our attachment statutes,supra.
In its rebuttal brief, Penrod raises the question: May an unconstitutional statute serve as the sole jurisdictional predicate for Bounds' cause of action? Last paragraph of the majority opinion concludes with the statement that whether "our chancery attachment statutes were unconstitutional is irrelevant. . . ." The majority's holding that whether the statute is unconstitutional is "irrelevant" runs counter to sound judicial principles.
As stated at the outset of this dissent, I find the majority's decision today to be incorrect for three basic reasons. First, there was admittedly no res ever attachable; therefore, there was no subject matter jurisdiction under the attachment in chancery statutes. A personal appearance by the defendant cannot cure such a fatal flaw. As we stated in Jacobson v. Jones,236 Miss. 640, 111 So.2d 408 (1959):
 The personal appearance of the parties in the proceeding cannot confer jurisdiction over the subject matter. In 14 Am. Jur., page 386, Sec. 191 appears this pronouncement: "As heretofore shown, the jurisdiction of the court over the subject matter of a cause of action must be conferred by law, and it cannot under any circumstance be conferred on a court, as such, by consent of the parties. It materially follows that if jurisdiction cannot be conferred by consent, the want thereof cannot be waived by any act of the parties."
236 Miss. at 651, 111 So.2d at 411.
Second, § 147 would preclude our reversal only if the sole
error was a mistake between equitable and legal jurisdiction. Here there was no jurisdiction. Finally, the entire procedure which provided the framework for the instant case, §§ 11-31-1 et seq., is admittedly one of the most glaring examples of a denial of due process as may be found in any prejudgment seizure procedure in any state in this country.
For reasons stated above, though with much deference, I file this dissent.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, J., join in this dissent.
[1] Effective July 1, 1980, our statutes on chancery attachments were amended for the obvious purpose of curing defects in the statutes as worded before July 1, 1980, and as discussed herein infra.
[2] The Mississippi attachment in chancery statutes were amended in 1980 (1980 Mississippi Laws, Chapter 467, effective from and after July 1, 1980). The present action was brought under the statute prior to its amendment by the legislature, and therefore all references to the Mississippi Attachment in Chancery statutes are to the unamended version unless otherwise indicated.
[3] Note the discussions of the historical origins of attachment in chancery procedures contained in Scruggs v.Blair, 44 Miss. 406 (1870), Dollman v. Moore, 70 Miss. 267, 12 So. 23 (1892), and Boyett v. Boyett, 152 Miss. 201, 119 So. 299
(1928).
[4] The traditional distinction between in rem, quasi in rem,
and in personam actions has lost much of its significance in view of the decision of the United States Supreme Court inShaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The Supreme Court held that all questions of jurisdiction over a defendant can no longer be evaluated purely in terms ofin rem, quasi in rem, or in personam. The distinction made here is not for the purpose of evaluating the sufficiency of the contracts of a principal defendant with the forum state in an attachment in chancery action, but rather is intended to show the step-by-step process involved in the operation of the statute.
[5] See MPI, Inc. v. McCullough, 463 F. Supp. 887 (N.D.Miss. 1978), and Mississippi Chemical Corp. v. Chemical ConstructionCorp., 444 F. Supp. 925 (S.D.Miss. 1977).
[6] In making the above finding, the chancellor was apparently seeking to distinguish the instant case from the Federal District Court case of Mississippi Chemical Corp., supra, and MPI, Inc.v. McCullough, supra, by indicating that in the instant case, since no property was attached, the due process requirements of the Fourteenth Amendment were not triggered. Nonetheless, since the question of subject matter jurisdiction is a threshold question, such a finding would seem, in view of the state of the record, to conclusively establish that there was no present indebtedness which could establish subject matter jurisdiction in the Chancery Court of Forrest County. *Page 940