COLONIAL LUMBER CO. *v.* ANDELUSIA NAT. BANK *et al.**

(Division A.   March 16, 1925.   Suggestion of Error Overruled April
13, 1925.)

[103 So. 343.   No. 24601.]

1. CARRIERS. *Bank purchasing draft for price of shipment of goods
   occupies relation of consignor to consignee only as to that ship-
   ment.*

   A bank which purchases a draft for the price of a shipment of
   goods, drawn by seller and consignor on buyer and consignee of
   goods, occupies, as to the consignee, the situation of the consig-
   nor only as to that shipment; so that though bank be not a *bona-
   fide* holder for value of the draft, the consignee after paying it
   could recover no part of its proceeds, as against the bank, for
   losses from defects in goods in shipments prior to that covered by
   the draft.

2. PLEADING. *Trial amendment of bill to cover loss discovered after
   filing of original, permissible.*

   Permitting amendment of bill at trial, so as to sue for loss dis-
   covered after filing of original bill, is proper; the statute and
   practice requiring amendments to be liberally allowed to pre-
   vent delay and injustice.

3. BILLS AND NOTES. *Holder of draft payable or indorsed to him pre-
   sumed to have bona-fide title and to have paid value.*

   The holder of a draft payable or indorsed to him, is presumed to
   have a *bona-fide* title to it and to have paid value therefor, and
   the burden of showing the contrary is on one asserting rights to
   its proceeds or setting up defenses against it.

4. BILLS AND NOTES. *Bank not a bona-fide purchaser or holder for
   value of draft by merely crediting depositor with amount of it.*

   Mere crediting by a bank of a depositor's account with the full
   amount of a draft drawn by him on a purchaser of goods from
   him and made payable to it, without actually paying out any
   funds, does not make the bank a *bona-fide* purchaser or a *bona-
   fide* holder for value of the draft; it being necessary in order for
   it to be such that it actually part with something of value.

5. BILLS AND NOTES. *Relative to bank being holder for value of draft for which it gave depositor credit, condition of his account some time after it received notice of defect, immaterial.*

Relative to a bank being a holder for value of a draft for the amount of which it credited a depositor's account, it is immaterial that some time after suit, giving the bank notice of defect in the draft, the depositor had to his credit in the bank a sum in excess of the amount of the draft; but the material inquiry is the state of the account at the time of and before the bank received such notice.

6. BILLS AND NOTES. *Any state of account necessary for bank being purchaser and holder for value of draft for which it gave depositor credit, presumed.*

If it be necessary, to make bank holder for value of a draft for which it gave a depositor credit, that between the time of such credit and notice to the bank of defect in the draft he shall have drawn out not only the amount of such draft but his entire balance, such state of his account will be presumed, in absence of showing to the contrary.

---

*Headnotes 1. Carriers, 10 C. J., Section 267 (1926 Anno); 2. Pleading, 31 Cyc., pp. 361, 441; 3. Bills and Notes, 8 C. J., Section 1289; 4. Bills and Notes, 8 C. J., Section 700; 5. Bills and Notes, 8 C. J., Section 700; 6. Bills and Notes, 8 C. J., Section 1296.

APPEAL from chancery court of Hinds county, First District.

HON. V. J. STRICKER, Chancellor.

Suit by the Colonial Lumber Company against the Andelusia National Bank and others. From decree in favor of the named defendant, complainant appeals. Affirmed.

*G. G. Lyell, F. M. West, Watkins, Watkins & Eager* and *Joseph M. White, Amicus curiae.*

The shipment being what should be called an "open" one, the attachment will lie: *Searles Bros.* v. *Grain, Co.,* 80 Miss. 688; *Bank* v. *Searles,* 81 Miss. 169. The facts in those cases are identical with the instant one. In the first mentioned case this court held that the bill would lie, and that the bank which bought the draft was in no

better position than the shipper of the commodity. In the last case which, though having a different title, is the same, it was held that the complainant could not hold the proceeds of the last shipment involved by attachment and garnishment for losses sustained by complainant on previous shipments where the bank which claimed to be the purchaser of the draft was not a party to the other transactions.

It should be borne in mind that Caton & Parker, in the instant case, did not ship the lumber to its own order, notify Colonial Lumber Company, appellant, but the shipment was an open one, having been made by Caton & Parker to Foster Lumber Co., Athens, Ohio, the customer of appellant. Copy of bill of lading having been sent to appellant by Caton & Parker, the former billed the shipment to the Foster Lumber Company and added thereto the profit it expected to make out of the transaction. The sale was made by Caton & Parker to appellant and the latter resold the lumber to the Foster Lumber Company and Caton & Parker shipped it to that concern as per instructions of the appellant.

Appellee relied to a large extent upon the case of *Bank* v. *Tchula Commercial Company*, 95 So. (Miss.) 742. That case has no application. This court decided there that where the shipment was a shipper's order notify one (which the instant one was not), and the draft with order bill of lading attached thereto had been purchased by the bank, the proceeds thereof could not be attached by the damaged consignee, because such a proceeding contravened the provisions of the Federal statute regulating commerce between the states, as there indicated, and passed since the decisions in the *Searles* cases, *supra.*

Appellee relied successfully upon *Bank* v. *Smith*, 95 So. (Miss.) 785. A careful reading of that case and the facts there stated will show its utter inapplication here. There Smith drew a check upon the Bank of Commerce for two hundred and fifty dollars payable to an auto company, and endorsed by the latter in blank. The auto

company presented Smith's check and another item for deposit in appellant's bank. It was duly received by the bank and credited to the auto company's account. The bank allowed the auto company to withdraw the entire deposit the same day as deposited. The bank sued Smith, claiming that it was a *bona-fide* holder for value, without notice of any infirmities as between Smith and the auto company. In legal effect the bank merely cashed the check and that amounted to a purchase of same. This court held that where a check payable to one or order is endorsed in blank and deposited in a bank for collection, the bank does not thereby become a holder for value of the check, but where such bank, on the same day, on presentation of a check of a depositor pays such depositor the full amount of the deposit the bank does thereby become a holder for value of the check therefor.

The record is absolutely silent that Caton & Parker drew out the entire amount of their deposits with the bank. That state of facts must exist before, under the *Smith case, supra,* the bank could be held under the Mississippi law to have been a *bona-fide* holder for value. The same rule prevails in Alabama as in Mississippi. *National Bank* v. *Morgan,* 207 Ala. 65, 92 So. 10, annotated in 24 A. L. R. 897.

That case, and especially the splendid annotation, squarely decides this case against appellee. This case probably should be determined by the law of Alabama (which, however, is the same as in Mississippi) and the case just referred to surely, in our opinion, is sufficient authority for this court to reverse the instant case and render judgment here for the appellant.

The burden of proof was upon appellee to prove such a state of facts as just quoted as this court will see from a reading of the first portion of the court's opinion to be found on pages 898 and 899 of 24 A. L. R., p. 897.

*Alexander & Alexander,* for appellees.

For some unaccountable reason appellant endeavors to base his contention upon the fact that the draft in-

volved in this suit was an "open" one instead of "shippers order notify." We fail to see how this distinction could have any bearing and are inclined to infer that appellant's contention is influenced by the knowledge that the facts in the case of *Bank* v. *Tchula,* 95 So. 742, happen to involve a bill of lading drawn to shippers order notify. It does not appear from either of the Searle cases cited by appellant whether the bills of lading were open or not.

In the following cases it has been held that the discounter of a draft with bill of lading attached had title without regard to the person whom the bill of lading names as consignee or whether it is endorsed or not. Thus, it has been held that the discounter had the title where the bill of lading received by him was—endorsed to the consignee. *Mather* v. *Gordon,* 77 Conn. 341, 59 Atl. 424. Drawn in favor of or to order of the consignee. *Davenport Nat. Bank.* v. *Honeyer,* 45 Mo. 145, 100 Am. Dec. 363; *Marine Bank* v. *Wright,* 48 N. Y. 1; *First Nat. Bank* v. *Kelly,* 57 N. Y. 34; *Holmes* v. *German Security Bank,* 87 Pa. 525; *Clary* v. *Tyson,* 97 Mo. App. 586, 71 S. W. 710; *City Bank* v. *Rome, W. & O. R. Co.,* 44 N. Y. 136; *Canandaigua Nat. Bank* v. *Southern R. Co.,* 64 Misc. 327, 118 N. Y. Supp. 668. Drawn to the consignee or bearer; *Allen* v. *Williams,* 12 Pick. 297. Drawn to the order of the consignor, and unendorsed. *Merchants' Bank* v. *Union R. & Transp. Co.,* 69 N. Y. 373; *Third Nat. Bank* v. *Hays,* 119 Tenn. 729, 108 S. W. 1060, 14 Ann. Cas. 1049.

It should be readily apparent that neither of the Searles cases have any application here. See *Bank* v. *Tchula,* 95 So. (Miss.) 742. The only other case cited by appellant that is at all in point is the case of *Bank* v. *Morgan,* 92 So. 10. It is significant that this case is admittedly contrary to the line of decisions set forth as settled law in the note appended to *Old National Bank* v. *Gibson,* 6 A. L. R. 262. This latter case and note were approved and endorsed by this court in the case of *Bank of Gulfport* v. *Smith,* 95 So. (Miss.) 785.

## I.

The Passing of Credit to the Depositor Under the Circumstances of This Case Creates a Presumption That the Title to the Draft Passed to the Bank. *Dirnfield* v. *14th Street Sav. Bank,* 37 App. (D. C.) 11, *Burton* v. *United States,* 196 U. S. 283, 49 L. Ed. 482, 25 Sup. Ct. Rep. 243; *Downey* v. *National Exch. Bank,* 96 N. E. 403; *Auto & Accessories Mfg. Co.* v. *Merchants Nat. Bank,* 116 Md. 179, 81 Atl. 294; *Jefferson Bank* v. *Merchants' Refrigerating Co.,* 236 Mo. 407, 139 S. W. 454; *Southwest Nat. Bank* v. *House,* 157 S. W. 809; *Krafft* v. *Citizens' Bank,* 139 App. Div. 610, 124 N. Y. Supp. 214; *King* v. *Bowling Green Trust Co.,* 145 App. Div. 398, 129 N. Y. Supp. 977; *Jaffe* v. *Weld,* 132 N. Y. Supp. 505, ordered affirmed in 133 N. Y. Supp. 1127; *Lyons* v. *Union Exch. Nat. Bank,* 150 App. Div. 493, 135 N. Y. Supp. 121.

To sum up our view on this particular phase, we contend that the proof shows that the bank took the draft as owner, a statement which would ordinarily seem to be against the interest of a bank and should therefore be considered at its full value; the custom and usage as between the bank and Caton & Parker support this view; the intention of the parties as evidenced by their acts supports this view; and behind all this stands the presumption from the circumstances that the bank received the draft as owner, and this presumption was never rebutted by the complainant.

## II.

The Appellee by Crediting the Depositor With the Full Amount of the Draft and Permitting it to Draw the Entire Amount out Before Suit, Constituted Such Bank the Purchaser for Value of the Draft. See *Bank* v. *Summers,* 105 Va. 689, 54 S. E. 862; *In re State Bank,* 56 Minn. 119, 45 Am. St. Rep. 454, 57 N. W. 336; *Fourth Nat. Bank* v. *Mayer,* 89 Ga. 108, 14 S. E. 891; *Williams* v. *Cox,* 97 Tenn. 555, 37 S. W. 282; *Friberg* v. *Cox,* 97 Tenn. 550, 37 S. W. 283; *Showalter* v. *Cox,* 97

Tenn. 547, 37 S. W. 286; *Titus* v. *Mechanics' Nat. Bank,*
35 N. J. L. 588.

In New York State, the rule is that *prima-facie* the
title passes to the bank when a check or draft is passed
to the credit of the depositor, but that the intention of
the parties governs, and that this intention may be shown
by usage, custom of the depositor and the bank, by the
form of endorsement or otherwise.  The authorities from
this state on this point are too numerous to collect here.
See, also *Burton* v. *United States,* 196 U. S. 283, 49 L.
Ed. 482; *Ladd & Tilton Bank* v. *Commercial State Bank,*
64 Or. 486, 130 Pac. 975; *Central Mercantile Co.* v. *Okla-
homa State Bank,* 83 Kan. 504, 33 L. R. A. (N. S.) 954,
112 Pac. 114.

### III.

IT IS IMMATERIAL WHETHER THE BANK HAD OR RESERVED
THE RIGHT TO CHARGE BACK THE AMOUNT OF THE DRAFT IF
SAME WAS DISHONORED OR UNPAID.  *Bank of Gulfport* v.
*Smith, supra.*  Only a moment of reasoning would show
that the nature of the transaction was fixed as of the date
thereof and therefore its legal effect could not be altered
by subsequent happenings, nor by such immaterial con-
sideration as the methods to which the bank would re-
sort to seek reimbursement in case the draft was dis-
honored.  Its right to seek reimbursement is analogous
to the right of a grantee in a warranty deed to seek re-
imbursement for a defect in title, which vested right
does not make the deed itself contingent or conditional.
The bank would have the common-law right to seek re-
imbursement for its loss in having purchased a thing of
no value.  It is immaterial that it has the advantage of
the more readily enforcing its rights by charging back
the amount of its loss to its depositor.

### IV.

IT WAS ERROR FOR THE COURT TO ALLOW THE COMPLAIN-
ANT BELOW TO AMEND ITS BILL UPON THE TRIAL OF THE
CAUSE.  Upon the trial of the cause complainant insisted

upon projecting a subsequently discovered claim over into a period antedating the defendant's bond and forced it to a trial upon an entirely new case after it had made its defense, taken its depositions and had the case set down for hearing upon the bill as originally filed, its bond and its answer. The injustice of such course should be apparent without further comment and this point is raised at this time by appellee in support of its assignment of error on cross-bill in order that such situation may fortify this court in its affirmance of the decree below.

*F. M. West* and *G. G. Lyell,* for appellant in reply.

I.

Whether the Andalusia National Bank was a *bonafide* holder and purchaser of the draft in question is to be determined by the law of Alabama. The bank and Caton & Parker, their regular customers, and depositors, were resident citizens of the state of Alabama and of the same town therein; and the lumber in question was manufactured at and shipped from the little town of Andalusia, Alabama. The amount of the draft was credited but conditionally credited, to Caton & Parker by the bank, in the usual way in which such drafts were handled with the reserved right in the bank to charge back to the account of Caton & Parker any unpaid draft. The facts of this case are identical with those in the Alabama case of: *Nat. Bank of Com.* v. *Morgan,* 207 Ala. 65 (92 So. 10, 24, A. L. R. 897.) The decision of the Alabama court in that case makes it clear that that court is very reluctant to hold that the crediting of the amount of checks and drafts deposited with the bank will make the latter a *bona-fide* purchaser, and it is only where the entire account has been checked out by a depositor that the bank is permitted to be treated as a *bonafide* purchaser.

The leading authorities cited by opposing counsel are considered in the *Morgan case* (*supra*) and either dis-

tinguished on the facts, or the Alabama court expressly declines to follow same. Appellee says that the Morgan case is contrary to the line of decisions set forth in the note appended to *Old National Bank* v. *Gibson,* 6 A. L. R. 252. This might be true, but it avails the appellee nothing, because this is an Alabama contract, and the decision of the supreme court of Alabama in the Morgan case, which was decided by the Alabama court, October 27, 1921, was the law of Alabama with reference to which the bank and Caton & Parker are supposed to have contracted. *Robertson* v. *Puffer Mfg. Co.,* 112 Miss. 890.

Most significant and important it is to note in the instant case the bill of lading was an open one. It was not a shipper's order notify bill of lading, but a straight bill of lading, and under the uniform Bill of Lading Act, so much relied upon by the appellee, a straight bill of lading is not negotiable. For this reason and for the further reason that under the decision of the supreme court of Alabama in the Morgan case the appellee here is not a *bona-fide* holder of the draft (it never was the holder of the bill of lading), the Uniform Bill of Lading Act cannot help the erroneous decree in this case to stand.

Argued orally by *F. M. West* and *C. G. Lyell,* for appellant, and *Julian P. Alexander,* for appellee.

Cook, J., delivered the opinion of the court.

The appellant, Colonial Lumber Company, a corporation engaged in buying and selling lumber, instituted an attachment in chancery against Caton & Parker, lumber manufacturers, of Andelusia, Ala., and the Andelusia National Bank, and the Jackson-State National Bank, of Jackson, Miss., the holder of the proceeds of a draft drawn on the appellant by Caton & Parker, and payable to the Andelusia National Bank. Upon the evidence offered in the court below a decree in favor of the

Andelusia National Bank was entered, and from this decree this appeal was prosecuted.

From the averments of the original bill and the proof offered in support thereof it appears that the appellant was engaged in the business of buying and selling yellow pine lumber at wholesale, buying the same from manufacturers to be shipped, to destinations throughout the country in car lots; that it purchased from Caton & Parker several shipments of lumber which were declined by the consignees to whom it had sold the same, because it had been defectively manufactured and did not meet the requirements of the consignees or the specifications of the appellant; and that by reason of this breach on the part of Caton & Parker the appellant had sustained losses amounting to six hundred thirteen dollars and fifty-two cents. In order to recover this loss, the appellant conceived the idea of ordering from Caton & Parker another car of lumber, and attaching in the hands of a Jackson, Miss., bank the proceeds of a draft to be drawn for the purchase price of the car of lumber, and in pursuance of this plan the appellant purchased a car of lumber from Caton & Parker, with instructions to ship the same to the Foster Lumber Company, of Athens, Ohio, and draw upon the appellant for eighty per cent, of the purchase price. Thereafter Caton & Parker shipped the car of lumber as directed, and drew a draft on the appellant for the sum of six hundred and fifty-six dollars payable to the Andelusia National Bank, and deposited the same in the said Andelusia National Bank. The Andelusia National Bank credited the account of Caton & Parker with the full amount of the draft, and thereafter forwarded the draft to the Jackson-State National Bank of Jackson, Miss., for collection and remittance to the Andelusia National Bank, and the amount of the draft was paid by the drawee to the said Jackson-State National Bank, and immediately the proceeds of the draft were attached under the original bill filed in this cause against Caton & Parker, the Andelusia National Bank, and the Jackson-State National Bank.

Caton & Parker or the Caton & Parker Lumber Company did not answer the bill of complaint, but the Andelusia National Bank filed an answer denying the material averments of the bill and the right of the appellant to subject the proceeds of the draft to its claim against Caton & Parker, and averring that it was a holder in due course of the draft in question, and consequently that it was the owner of the proceeds of the draft, and the same were not subject to attachment for a debt due or alleged to be due by the defendant Caton & Parker Lumber Company, to the complainant.

At the time the draft in question was paid by the appellant, and at the time of the filing of this original bill, the appellant had no reason to believe that there would be any breach of contract by Caton & Parker as to this last car, but when the car arrived at its destination it was refused by consignee on account of being defective in grade and quality, and after considerable controversy over this shipment, with the consent of Caton & Parker, it was finally disposed of to another party at a loss of $368.20. At the trial of the cause, over the objection of the appellee, the appellant was permitted to amend its original bill so as to sue for the loss sustained upon this last car, and by cross-appeal the appellee assigns as error the action of the court in allowing this amendment.

The cashier of the appellee the Andelusia National Bank testified that the Caton & Parker Lumber Company was a regular customer of appellee; that it was the custom of this lumber company to handle drafts on their customers through the appellee bank, the bank taking actual ownership of the drafts and crediting the proceeds to the Caton & Parker Lumber Company subject to their check; that the appellee did not accept the particular draft in question as a collection item, but accepted it as a cash item and immediately credited the account of the Caton & Parker Lumber Company with the full amount of the draft. The exact status of the account of the Caton & Parker Lumber Company with the appellee between the deposit of the draft and the filing

of this suit is not developed in the record, the only testimony bearing upon this point being the answer of the cashier of the appellee to the following interrogatory:

"If you have stated that the face of this draft was credited to Caton & Parker by your bank, state whether this amount was, before this suit, or has been subsequently, drawn out by Caton & Parker?"

To this question, he replied: "The amount of this draft was drawn out by Caton & Parker Lumber Company before this suit."

The deposition of this witness was taken sixteen months after the suit was filed, and he testified that the Caton & Parker Lumber Company was then indebted to the bank in the sum of about five thousand dollars and that it then had on deposit with the bank the sum of one thousand five hundred eighty-six dollars and seventy-four cents, but there was no effort whatever to show the state of this account between the time of the deposit of the draft and the filing of the suit, further than this statement of the cashier of the bank that the amount of this draft had been checked out before this suit.

Under no view of this case would the appellant be entitled to recover any part of the proceeds of this draft as against the appellee, the purchaser thereof, for losses sustained by reason of defective lumber in shipments made prior to the one covered by the particular draft and bill of lading, and for which losses the original suit was filed. In the case of *Bank* v. *Searles,* 81 Miss. 169, 32 So. 314, it was held that a bank which purchased a draft with bill of lading attached occupies, as to the consignee, the situation of the consignor only as to the goods represented by the particular draft and bill of lading, and that the consignee, after paying the draft and receiving the bill of lading, cannot subject the proceeds of the draft in the hands of a collecting bank to his demand for damages or losses sustained on other and prior shipments of goods, although they may have been included in one contract of sale. The bill as originally filed sought to recover only losses on prior and wholly disconnected

138 Miss.—37.

shipments, and consequently the court below was correct in denying recovery for these losses. There is an additional reason why this action of the court was correct, and that is, the appellant utterly failed to prove that any such losses had been sustained.

The next question presented for consideration is whether the court erred in permitting the appellant to amend its bill so as to seek a recovery for losses, amounting to three hundred sixty-eight dollars and twenty cents, sustained by reason of defective lumber in the shipment represented by the particular draft and bill of lading in controversy. At the time this original bill was filed, the appellant had no information in regard to the defective character of this last shipment of lumber, and no reason to believe that any loss would be sustained on account of this shipment. Our statute and practice require that amendments shall be liberally allowed so as to prevent delay and injustice, and we do not think the court erred in permitting this amendment by which it was sought to recover a loss that had been discovered after the filing of the original bill.

This amendment having been permitted, there remains for consideration the action of the court in denying recovery against the appellee, out of the proceeds of the draft, the three hundred sixty-eight dollars and twenty cents loss alleged to have been sustained on the car of lumber for the purchase price of which the particular draft was drawn.

The holder of a draft or other negotiable paper payable to or indorsed to him is presumed to have a *bona-fide* title to, and to have paid value for it, and the burden of showing to the contrary is upon him who asserts rights to the proceeds thereof or sets up defenses against it. *Harrison et al.* v. *Pike Bros. & Co.*, 48 Miss. 46; *Emanuel* v. *White*, 34 Miss. 56, 69 Am. Dec. 385. But the mere crediting of a depositor's account with the full amount of a draft does not constitute a bank a *bona-fide* purchaser of the draft. To be such, the holder of the draft must actually part with something of value, and if

it is shown that the bank merely gave credit to the depositor for the amount of the draft without actually paying out any funds, such bank is not a *bona-fide* holder for value. In the case at bar it was affirmatively shown that the entire amount of this draft was drawn out before this suit, but there was no effort whatever made to show the exact status of the depositor's account between the date of the draft and the filing of the suit. It was shown that at the time of the taking of the deposition of appellee's cashier, which was about seventeen months after the filing of the suit, the depositor had to its credit in the appellee bank a sum in excess of the amount of this draft; but this was immaterial. The material inquiry was as to the state of the account at the time of and before the bank received notice of an infirmity in the draft by the filing of the suit. As to this the record is entirely silent. The draft was drawn and credit therefor given on January 17, 1923, and this suit was filed on February 3, 1923. During the time intervening between the date of the draft and the filing of the suit, the depositor's entire balance may have been drawn out, or its account may have been overdrawn. If the contention of the appellant that in order to constitute the bank a holder for value, it was necessary that the depositor's entire balance should have been drawn out between the date of the credit and the filing of the suit, be conceded, it was not shown that such was not the case, and the presumption that the bank was a purchaser for value must prevail.

In the case of *Bank of Gulfport* v. *Smith*, 132 Miss. 63, 95 So. 785, it was held that when a bank receives for deposit a check payable to the depositor and drawn on another bank, and permits the depositor to withdraw the amount of the check before notice of any infirmity therein, it becomes a holder for value of the check. It seems that this holding is controlling here, and consequently the decree of the court below will be affirmed.

*Affirmed.*