GLOBE REALTY CO. *v.* HARDY.

(Division B. Nov. 19, 1928. Suggestion of Error Overruled Dec. 22, 1928.)

[119 So. 192. No. 27338.]

J. F. Galloway, of Gulfport, for appellant.

Gardner, Brown & Morse and Ross, Backstrom & Bickerstaff, all of Gulfport, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant, as assignee of one Nat Owen of a one-third interest in an option contract between appellee and Owen, filed its bill in the chancery court of Harrison county against appellee and Owen, to recover the sum of one thousand dollars under the provisions of said option contract, which sum had been furnished by appellant to Owen, and, by the latter, paid to appellee in part payment for the option to purchase from appellee the Southwest quarter of the Northwest quarter of Section 32, Township 7, Range 10 west, less ten acres off the east side thereof, in Harrison county. There was a trial on original bill and amendments thereto, and answer of appellee to the bill as amended, and proofs, resulting in a decree in appellee's favor, but against the other defendant, Owen, for three hundred and thirty-three dollars and thirty-three cents, from which he, Owen, prosecuted no appeal. From the decree in favor of appellee, appellant prosecutes this appeal.

On the 9th day of November, 1925, appellee executed and delivered to Nat Owen an option to purchase. the land above described. The option provided that appellee was to deliver to Owen an abstract of title, showing an unincumbered fee-simple title to the land in her; and further provided that the contract was simply an option to purchase on the part of Owen, and that the latter should have a certain time, provided in the option, in

which to examine the abstract of title to the land and satisfy himself that the title was good. This option, by its terms, expired on January 2, 1926. On the 29th day of December, 1925, the option, without further consideration, was extended to the 9th day of January, 1926. On demand, appellee furnished Owen an abstract of title to the land, which was turned over to Owen's attorney to pass upon. Owen's attorney urged certain objections to the title, which, however, were later cured by appellee obtaining a quitclaim deed from one Thomas Sully. On the 27th of February, 1926, in consideration of one thousand dollars paid by Owen to appellee, the option was extended to the 1st day of July, 1928. In this extension addition to the option contract, it was provided that, in the event the title to the land was not satisfactory to Owen, or his assigns, then the payments theretofore made for the option of two thousand dollars, should be returned to Owen upon his demand. On the 24th day of February, and prior to the time when this extension of the option was granted by appellee, Owen conveyed to one S. J. Reigh a one-third interest in and to the property rights and privileges vested in him on account of the option. On the 13th day of April 1926, and after the quitclaim deed had been made to appellee by Thos. Sully, Owen's attorney unconditionally approved the title to the property as being an unincumbered fee-simple title in appellee. Of the existence of the assignment by Owen of a one-third interest in the option to Reigh, the record shows that appellee knew nothing—that she had no notice thereof, either actual or constructive; that all the while, up to and including the date upon which Owen's attorney approved the title, appellee dealt alone with Owen, and knew neither Reigh nor appellant in the transaction. The record shows that neither appellant nor Reigh ever made any move before that time to give appellee notice that they held an interest in the option by assignment from Owen. The consideration paid by

Reigh to Owen for the one-third interest in the option was six hundred and sixty-six dollars and sixty-six cents, but at the time Reigh advanced to Owen the further sum of three hundred and thirty-three dollars and thirty-three cents as a loan in order to enable him to pay appellee the sum of one thousand dollars for the extension of the option.

After the approval of the title to the land by Owen's attorney, neither Owen nor his attorney, at any time thereafter, raised any objection to the title. Appellee therefore concluded, and claims to have been justified in so doing, that Owen had decided to decline to accept a conveyance of the land, and to forfeit to her the option money of two thousand dollars, paid by him to her for the option.

On the 15th day of April, 1926, two days after Owen's attorney had approved the title to the land, Reigh secured the abstract of title which appellee had furnished Owen's attorney, and had it examined by his (Reigh's) attorney, who rejected the title as being defective. Reigh really purchased his interest in the option for appellant, a realty corporation being formed at the time, and, later, assigned his interest to appellant. Appellee knew nothing of appellant's interest in the option until the bill in this case was filed. Appellant, claiming, on the advice of its attorney (who was also Reigh's attorney), that the title to the land was imperfect, declined to accept a conveyance of the land, and filed the bill in this case against appellee and Reigh, jointly, to recover the one thousand dollar option money which Reigh had furnished to Owen to enable the latter to pay appellee for the second extension of the option.

Appellant's position is that as assignee of a one-third interest in the option, it stood in Owen's place to that extent, and had the right, under the provisions of the option, to reject appellee's title to the land if not sat-

isfactory to it, and thereupon demand and receive of appellee one-third of the two thousand dollars paid by Owen to appellee for the option; while appellee's contention is that in dealing with Owen she was dealing with the undisclosed agent of an undisclosed principal, the undisclosed principal being, first, Reigh, and, later, appellant, and therefore, under the law, the action of Owen in accepting the title to the land as an unincumbered fee-simple title in appellee was not only binding on Owen, but was binding on both of his undisclosed principals.

The principle relied on by appellee to sustain her contention is stated thus in Bank v. Leflore Grocery Co., 147 Miss. 43, 112 So. 700, 53 A. L. R. 407:

"Where a third person enters into a contract with an undisclosed agent, believing him to be the real principal, the agent assuming to act as principal, and the third person is sued upon the contract by the real principal, he may avail himself of any defense which exists in his favor against the undisclosed agent at the time the principal first demands fulfillment of the contract."

In Parker v. Dantzler Foundry & Machine Works, 118 Miss. 126, 79 So. 82, L. R. A. 1918F, 795, the court said that it was an essential principle of law that a party had the right to select with whom he would contract, and and could have no person thrust upon him without his consent; that the wisdom of that rule was manifest in that case, where the party sued had a perfect defense by way of set-off against the party with whom he thought he was contracting. Here we have appellee dealing exclusively with Owen, the undisclosed agent of an undisclosed principal. Appellant's bill charged that in paying the one thousand dollars for the last extension of the option Owen was "acting for himself and as the agent of his co-optionee, your complainant herein." But it was not alleged in appellant's bill, nor did the evidence

tend to establish, that appellee knew, or had any reason to believe, that at any time before the title to the land was approved by Owen's attorney, the latter represented any one except himself. Certainly, after Owen's attorney approved the title to the land, Owen had no right to sue for the option money, or any part thereof. Under the terms of the option contract, if he approved the title and refuse to pay the purchase money and accept a conveyance of the land, the option money was forfeited to appellee. That is exactly what occurred, according to the evidence in the case. Is appellant, as assignee of an interest in the option, in any better position than Owen? We think not. Appellee had satisfied Owen as to her title to the land. That was the end of her obligation if Owen declined to demand and accept a conveyance of the land and pay the agreed purchase money therefor. And that is what he did. After Owen approved the title to the land, appellee was under no obligation whatever to satisfy either Reigh or appellant as to the character of her title.

Appellant argues, however, that appellee had knowledge of sufficient facts and circumstances, before Owen's attorney approved the title to the land, to put her on notice that Reigh, the assignor of appellant, owned an interest in the option by assignment from Owen, and to sustain that contention, appellant refers to a part of appellee's testimony as a witness in her own behalf. She stated, in substance, that about the time Owen's attorney approved the title to the land, she was informed that a man named Reigh had some connection with the option; as to what, she did not know. We are of opinion that this was not sufficient to put appellee on inquiry. The option contract was a nonnegotiable instrument. The rule with reference to such instruments is that any defense the debtor may have against the payee, which existed before the latter received notice of the assignment, may be

pleaded against the assignee, and the duty is on the assignee to give the debtor actual notice of his rights. Harvin v. Galluchat, 28 S. C. 211, 5 S. E. 359, 13 Am. St. Rep. 671. In that case, the court said, among other things:

"The single question in the case, then, is, was it error in his honor to rule, as matter of law, that personal notice to Mrs. Galluchat was necessary, and, consequently, that the notices to the other parties mentioned were insufficient, there being no evidence that said notices had ever reached Mrs. Galluchat? It is laid down in all the authorities upon the subject of assignment of unnegotiable paper (Story, Pomeroy, and in numerous cases), that in order to protect his rights under an assignment, the first duty of the assignee is to give notice to the debtor. A failure to do this is at the peril of losing the debt, either by a subsequent assignment to another party, or new defenses arising between the assignor and the debtor, or a payment by the debtor to the assignor.

"It is true the term 'actual' is not used in the authorities as qualifying the notice, but it is said that notice must be given to the debtor, and when the purpose and object of the notice is considered, we are forced to the conclusion that actual personal notice is what is meant. The object of the notice is not only to protect the assignee, but the debtor also. The debtor has contracted to pay a certain party, and at common law he could not, by assignment of his contract, be made the debtor of another with whom he did not contract, and to whom, perhaps, he would not have voluntarily assumed the relation of debtor."

It seems a very just and reasonable rule to require the assignee of an interest in such a chose in action, for his own protection, as well as the protection of the debtor, to notify the latter of his interest. There is no pretense in this case that either Reigh or appellant ever gave ap-

pellee either actual or constructive notice of their interest in the option contract.

Affirmed.